946 So.2d 234 (2006)
Roy RASPANTI
v.
E. John LITCHFIELD and Berrigan, Litchfield, Schonekas, Mann, Traina and Thompson, L.L.C.
Roy Raspanti
v.
E. John Litchfield and Berrigan, Litchfield, Schonekas, Mann, Trainor and Thompson, L.L.C.
Nos. 2005-CA-1512, 2006-CA-0331.
Court of Appeal of Louisiana, Fourth Circuit.
November 21, 2006.
Rehearing Denied January 16, 2007.
*236 Roy Raspanti, Metairie, LA, pro se.
Douglas M. Schmidt, Doug Schmidt, A.P.L.C., Dane S. Ciolino, New Orleans, LA, for Roy Raspanti.
G. Frederick Kelly III, G. Frederick Kelly III, LLC, New Orleans, LA, for E. John Litchfield & Berrigan, Litchfield, Schonekas, Mann, Trainor and Thompson.
(Court composed of Judge JAMES F. McKAY, III, Judge, TERRI F. LOVE, Judge, MAX N. TOBIAS, JR.)
LOVE, Judge.
This appeal arises from a dispute, between attorneys, over attorney's fees pursuant to referrals. Roy Raspanti successfully represented Mr. and Mrs. Byrd. However, Mr. and Mrs. Byrd's previous attorneys sued Roy Raspanti seeking attorney's fees based on quantum meruit, tortious interference with a contract, and unjust enrichment. Roy Raspanti alleged that E. John Litchfield, of Berrigan, Litchfield, Schonekas, Mann, Trainor and Thompson, agreed that the Firm would reimburse his costs and fees for representing himself in the suit. Roy Raspanti did not receive monetary reimbursement or a return of the $292,303.15 advance he paid the Firm for assistance. E. John Litchfield filed an exception of no cause of action, which the trial court granted. The Firm later filed a motion for contempt and sanctions against Roy Raspanti. Roy Raspanti alleged that the defense attorneys lied on the certificates of services of the pleadings and discovery requests because it stated that all counsel of record had been served. He did not receive copies of discovery requests and other pleadings. The trial court found Roy Raspanti in contempt and dismissed his case with prejudice. The two appeals regarding the no cause of action as to E. John Litchfield and discovery sanctions were consolidated in this appeal.
Roy Raspanti appeals asserting the trial court erred by denying his motion for a new trial based on the exception of no cause of action and refusing to allow him to amend his petition. He also avers that he did not violate the trial court's discovery order willfully, in bad faith, or through his fault and he was not "clearly aware" that noncompliance with the discovery order would result in the dismissal of his case. Lastly, Roy Raspanti asserts that the trial court erred in denying his motion for summary judgment. We find that the trial court did not err in granting the exception of no cause of action as to E. John Litchfield. However, we find that the trial court abused its discretion by dismissing his case with prejudice and by declaring Attorney Raspanti's motion for summary judgment and the Firm's exception *237 of no cause of action moot. Thus, we reverse in part and remand these matters to the trial court for proceedings consistent with this opinion.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
E. John Litchfield ("Attorney Litchfield"), of Berrigan, Litchfield, Schonekas, Mann, Trainor and Thompson, L.L.C. ("the Firm"), engaged in the referral of cases to Roy Raspanti ("Attorney Raspanti") with one-third of the fee going to Attorney Litchfield and the Firm and two-thirds to Attorney Raspanti. In 1988, Attorney Litchfield referred Connie and Greg Byrd ("the Byrds") to Attorney Raspanti. Attorney Raspanti successfully concluded the Byrds' litigation and received $596,606.31 in attorney's fees. Attorney Raspanti also expended $12,000 in costs while representing the Byrds. The Byrds' previous attorneys, Robert and Thomas Keaty ("the Keatys"), sued Attorney Raspanti alleging tortious interference with a contract, unjust enrichment, and quantum meruit.
Attorney Raspanti alleges that Attorney Litchfield orally agreed, personally and on behalf of the Firm, to reimburse him for half the cost of defending himself against the Keatys. He asserts that this agreement included attorney's fees and that Attorney Litchfield and the Firm would pay half of the resulting judgment or settlement. As a result, Attorney Raspanti tendered $292,303.15, from the Byrds' fee, to the Firm. Attorney Litchfield permitted Attorney Raspanti's brother, Joseph Raspanti, to assist in his defense. The Firm paid half or $8,286 of Joseph's Raspanti's attorney's fees bill. In 1995, Joseph Raspanti asked for further assistance in defending his brother and Attorney Raspanti asked Attorney Litchfield if he could hire William Cherbonnier ("Attorney Cherbonnier"). Attorney Litchfield agreed but reserved the right to terminate him and stop paying half of Attorney Cherbonnier's bill. Attorney Raspanti alleges that Attorney Litchfield also agreed to hire Thomas Gibbs to assist in his defense.
The Firm did not pay half of the costs, half of Attorney Cherbonnier's $9,887.12 bill, half of Attorney Raspanti's attorney's fees, and half of Attorney Raspanti's bill. As a result, Attorney Raspanti requested that the Firm return the $292,303.15 that he tendered the Firm as an advance.
In 2002, Attorney Raspanti sued Attorney Litchfield and the Firm seeking the return of the money advanced and costs. Dane Ciolino ("Attorney Ciolino") and Douglas Schmidt ("Attorney Schmidt") enrolled as Attorney Raspanti's co-counsel of record in June 2002 and October 2004, respectively. Attorney Litchfield filed a peremptory exception of no cause of action. No one representing Attorney Raspanti attended the hearing, and the trial court granted the motion. Attorney Raspanti asserted he did not receive service of the motion and filed a motion for a new trial, which the trial court denied.
The Firm filed a motion to compel in April 2005 alleging that Attorney Raspanti failed to comply with any of their discovery requests and that no attorney representing him attended the Rule 10.1 conference scheduled for April 15, 2005. Attorney Raspanti alleged that he was not served with any of the pleadings or discovery requests, but that some of his co-counsel received the pleadings. Attorney Ciolino and Attorney Schmidt stated, in affidavits, that they received certain pleadings, but did not contact Attorney Raspanti because all of the pleadings contained a certificate of service clause stating that all attorneys of record were served. Attorney Raspanti then filed a motion for summary judgment against the Firm. The trial *238 court granted the Firm's motion to compel and ordered Attorney Raspanti to provide answers to the interrogatories and requests for the production of documents within ten days of the hearing or by June 6, 2005.
The Firm then filed a motion for contempt and sanctions for Attorney Raspanti's violation of the trial court's discovery order. The alleged violations included insufficient answers to discovery and a dispute over the copying of a 15,000 to 18,000 page file. The Firm filed a second motion for sanctions because Attorney Raspanti did not attend the scheduled deposition. The trial court granted the Firm's motion, dismissed Attorney's Raspanti's case against the Firm with prejudice, and awarded the Firm $500 in attorney's fees and costs. Further, the trial court determined that the Firm's peremptory exception of no right of action and Attorney Raspanti's outstanding motion for summary judgment were moot. Attorney Raspanti filed a motion for a new trial, which the trial court also denied. Attorney Raspanti timely appealed both of the above judgments and the matters were consolidated.
Attorney Raspanti asserts the trial court erred: 1) by denying his motion for new trial on the peremptory exception of no cause of action as to Attorney Litchfield; 2) by refusing to allow him to amend his petition; 3) because it is contrary to the law to dismiss Attorney Litchfield as a defendant; and 4) because good grounds existed for granting his motion for new trial. As to the appeal against the Firm, Attorney Raspanti avers the trial court erred because: 1) the record did not show that he was clearly aware that noncompliance with the trial court's discovery order would result in the dismissal of his case; 2) he did not violate the discovery order willfully, in bad faith, or through his fault; 3) it dismissed his case; and 4) it did not grant his motion for summary judgment.

OUTSTANDING APPELLEE MOTIONS
There is one outstanding appellate motion in this matter. The Firm filed a motion for contempt and to return the brief of appellant, which was deferred pending oral argument. We hereby deny the motion and continue with the substance of these appeals.

NO CAUSE OF ACTION
The peremptory exception of no cause of action is a question of law that requires the appellate court to conduct a de novo review. Indus. Co. v. Durbin, 02-0665, pp. 6-7 (La.1/28/03), 837 So.2d 1207, 1213. "The function of the peremptory exception of no cause of action is to question whether the law extends a remedy against the defendant to anyone under the factual allegations of the petition." Id. at p. 6, 837 So.2d at 1213. "The exception is triable on the face of the papers and for the purposes of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true." Fink v. Bryant, 01-0987, p. 4 (La.11/28/01), 801 So.2d 346, 349. The exception of no cause of action should be granted if it "appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief." Indus., 02-0665, p. 7, 837 So.2d at 1213.
The burden of proving an exception of no cause of action remains with the exceptor. S. Tools & Supply, Inc. v. Beerman Precision, Inc., 03-0960, p. 6 (La.App. 4 Cir. 11/26/03), 862 So.2d 271, 277. "When it can reasonably do so, the court should maintain a petition against a peremptory exception [of no cause of action] so as to afford the litigant an opportunity to present his evidence." Kuebler v. *239 Martin, 578 So.2d 113, 114 (La.1991). However, considering the well-pleaded facts as true, the court cannot grant a no cause of action exception if it requires the court "to accept as true charges so patently unsound and unfounded as to lead to the belief that they were inserted merely to prevent the dismissal of the petition." Trumbaturi v. Katz & Bestoff, 154 So. 58, 60-61 (La.App.Orleans 1934), rev'd on other grounds, 180 La. 915, 158 So. 16 (1934).
In regards to the peremptory exception of no cause of action, "[n]o evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action." La. C.C.P. art. 931. However, the trial court shall order an amendment to the petition "[w]hen the grounds of the objection pleaded . . . may be removed by amendment." La. C.C.P. art. 934. "[A]mendment is not permitted when it would constitute a vain and useless act." Butler v. Reeder, 93-764 (La.App. 5 Cir. 3/16/94), 635 So.2d 1206, 1208.
"A new trial shall be granted . . . [w]hen the verdict or judgment appears clearly contrary to the law and evidence." La. C.C.P. art.1972. "A new trial may be granted in any case if there is good ground therefore, except as otherwise provided by law." La. C.C.P. art.1973.
Attorney Raspanti asserts that the trial court erred by denying his motion for a new trial on the exception of no cause of action, that the trial court should have permitted him to amend his petition, and that dismissing Attorney Litchfield was contrary to the law. Attorney Raspanti avers that Attorney Litchfield "personally" agreed to reimburse him as well as speaking on behalf of the Firm.
Attorney Raspanti's petition seeks dissolution of the alleged oral agreement and the return of the $292,303.15 advance. He relies on Honeywell, Inc. v. Sierra, 543 So.2d 594, 596 (La.App. 4th Cir.1989), in support of the argument that Attorney Litchfield personally agreed to reimburse his costs and pay his attorney's fees in relation to his defense against the Keatys. However, Honeywell stated, "the capacity in which a party executes a document is largely a matter of intent which is determined from the circumstances of the transaction." Id. Attorney Raspanti's petition stated, in part:
VI.
In April, 1992, plaintiff Roy Raspanti received the $596,606.31 fee. In that same April, 1992, defendant Litchfield personally, and on behalf of defendant Berrigan, Litchfield, agreed to pay one-half of the cost defending the Keaty v. Raspanti matter, including attorneys' fees and that he and defendant Berrigan Litchfield would be responsible for one-half of any amounts that Roy Raspanti had to pay in the event of a judgment or settlement of said matter. In consideration of those two obligations on the part of the defendant Litchfield and defendant Berrigan Litchfield, and the limited assistance defendant Litchfield rendered to Roy Raspanti in the representation of Greg and Connie Byrd in Byrd v. Bossier, Roy Raspanti agreed to give and gave defendant Litchfield and defendant Berrigan Litchfield $292,303.15 out of the fee he, Roy Raspanti, realized from his representation of the Byrds. This oral agreement was confected in New Orleans, Louisiana.
The capacity in which Attorney Litchfield allegedly bound himself in the oral agreement is in the context of his legal practice and as a member of a limited liability company. Attorney Raspanti is asserting that Attorney Litchfield personally guaranteed *240 the Firm's alleged obligation. La. R.S. 12:1320 states, in pertinent part:
B. Except as otherwise specifically set forth in this Chapter, no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.
C. A member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person's rights against or liability to the limited liability company.
As referenced in Honeywell, Attorney Litchfield's capacity and intent when entering into the alleged oral contract was in reference to his legal membership in the Firm. Accordingly, Attorney Litchfield did not intend to guarantee the Firm's alleged obligation personally and is not a proper party for Attorney Raspanti to sue in order to enforce the Firm's alleged obligation.
Alternatively, Attorney Litchfield's alleged oral contract could be construed as a personal guarantee of the Firm's alleged obligation to Attorney Raspanti. "A contract of guaranty is equivalent to a contract of suretyship." Guar. Bank & Trust Co. v. Jones, 489 So.2d 368, 370 (La.App. 5th Cir.1986). A suretyship "is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so." La. C.C. art. 3035. Suretyship agreements and contracts of guaranty must be explicit and in writing. La. C.C. art. 3038; Guar. Bank, 489 So.2d at 371. Attorney Raspanti stated in his petition, "[t]his oral agreement was confected in New Orleans." There is no remedy at law for Attorney Raspanti in regards to a guarantee of the Firm's alleged obligation because the guarantee was not in writing.
Attorney Raspanti could not cure the lack of a legal remedy against Attorney Litchfield by amending his petition pursuant to La. C.C.P. art. 934. Therefore, we do not find that the trial court erred by denying Attorney Raspanti's motion for a new trial, as it was not clearly contrary to the law or evidence.

CONTEMPT AND SANCTIONS
La. C.C.P. art. 1471 provides the trial court with varying sanctions used when a party does not comply with a discovery order. La. C.C.P. art. 1471 states:
If a party or an officer, director, or managing agent of a party or a person designated under Articles 1442 or 1448 to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under Article 1469 or Article 1464, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
(1) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order.
(2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence.
(3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action of proceeding or any part thereof, or rendering a judgment by default against the disobedient party.
(4) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to *241 obey any orders except an order to submit to a physical or mental examination.
(5) Where a party has failed to comply with an order under Article 1464, requiring him to produce another for examination, such orders as are listed in Paragraphs (1), (2), and (3) of this Article, unless the party failing to comply shows that he is unable to produce such person for examination.
In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
The trial court has vast discretion on imposing sanctions for failing to comply with a discovery order. Fulgham v. An Unknown Police Officer, 480 So.2d 417, 418 (La.App. 4th Cir.1985). Thus, appellate courts do not reverse the trial court's imposition of sanctions absent an abuse of discretion. Peter v. Touro Infirmary, 05-0317, p. 4 (La.App. 4 Cir. 7/6/05), 913 So.2d 131, 134.
Failing to obey court ordered discovery is a more "serious matter" that requires more "severe sanctions" than failing to comply with discovery. Horton v. McCary, 93-2315 (La.4/11/94), 635 So.2d 199, 203. The dismissal of a complaint with prejudice "is the ultimate sanction for a plaintiff" and "should be imposed for failure to comply with a discovery order only as a last resort, and only after the litigant has been afforded the opportunity to be heard." Id. at p. 5, 913 So.2d at 134. Dismissal has also been described as a "draconian penalty." Hutchinson v. Westport Ins. Corp., 04-1592, p. 2 (La.11/8/04), 886 So.2d 438, 440. Further, the sanction of dismissal should be imposed "where a plaintiff is clearly aware that his non compliance will result in dismissal." Helm v. Mervyn's Dep't Store, 97-0547 (La.App. 4 Cir. 8/20/97), 699 So.2d 129, 131. Additionally, the record must establish "that the noncompliance was due to the willfulness, bad faith or fault of the party, not merely the attorney." Peter, 05-0317, p. 5, 913 So.2d at 134. "Because the sanctions of dismissal or default involve property rights, those sanctions are generally reserved for the most culpable conduct." Horton, 93-2315, 635 So.2d at 203.
The Louisiana Supreme Court adopted four factors from the federal courts "to consider before taking the drastic action of dismissal." Hutchinson, 04-1592, p. 3, 886 So.2d at 440. The factors take into account "whether the violation was willful or resulted from inability to comply," "whether less drastic sanctions would be effective," "whether the violations prejudiced the opposing party's trial preparation," and "whether the client participated in the violation or simply misunderstood a court order or innocently hired a derelict attorney." Id.
Attorney Raspanti asserts that the trial court erred in dismissing his suit with prejudice because he was never served with any pleadings or discovery requests. He avers that he was not clearly aware that noncompliance with the trial court's discovery order would result in the dismissal of his case and that he did not violate the discovery order willfully, in bad faith, or through his fault.
The court ordered discovery deadline in the case sub judice was June 22, 2005. The Firm served discovery requests upon Attorney Schmidt. However, the certificates of service on the requests contained the statement: "I HEREBY CERTIFY that a copy of the above and foregoing has been served upon all counsel of record. . . ." *242 The Firm received no response and filed a motion to compel. The trial court granted the Firm's motion to compel and ordered Attorney Raspanti to provide answers to interrogatories and responses to the request for production of documents within ten days of the hearing, May 27, 2005, or by June 6, 2005. The trial court did not indicate which sanctions could be granted if he did not obey the order.

File Copying
Attorney Raspanti discussed with the Firm, on June 3, 2005, the details of copying the 15,000 to 18,000 page file it requested. The Firm agreed to copy the entire file. Both the Firm and Attorney Raspanti agreed upon DocuMart to copy the file for $.15 per page, on June 6, 2005. The Firm then found an alternative copy center, Choice Copying Service, which offered a rate of $.18 per page. DocuMart changed its quote to $.25 per page after viewing the file. After contacting DocuMart, both parties agreed that the file would be copied at DocuMart if it could match Choice Copying Service's $.18 per page quote. Monique Weilbaecher, a DocuMart employee, stated in her affidavit, that she telephoned Rick Kelly ("Attorney Kelly"), the attorney for the Firm, and told him that DocuMart could match the $.18 per page quote if it received a "written statement by Choice Copiers." She further stated that he never called her back regarding the price quote, which meant that she could not begin copying the file. As a result, Attorney Raspanti retrieved his file and waited to hear from Attorney Kelly. He stated that upon notice he would return the file to the approved copy center. On June 8, 2005, Attorney Raspanti sent his answers to interrogatories and request for production of other documents, which the Firm stated were evasive and incomplete. The Firm contends the responses constituted a failure to answer.

The Firm's Request to Depose Attorney Raspanti
Attorney Kelly sent a letter, on June 8, 2005, expounding its intent to depose Attorney Raspanti. The Firm sought to depose him at noon on either June 15 or June 21, which was a week or less before the discovery cut-off period and gave him less than a twenty-four hour period to respond. Neither of Attorney Raspanti's co-counsels of record were available for those dates due to other pending legal matters. Attorney Raspanti offered a date for his deposition after the discovery deadline and Attorney Kelly allegedly agreed predicated upon the condition that Attorney Raspanti could not conduct any discovery after the deadline. Attorney Kelly did not provide further correspondence regarding the deposition and the Firm did not want to continue the trial. The Firm scheduled Attorney Raspanti's deposition for June 21, 2005, the day before the discovery deadline even though the Firm knew that neither of his co-counsel could attend due to other prior legal commitments. Attorney Raspanti asserts that he was not served with a subpoena and he did not appear.

Affidavit of Attorney Schmidt
Attorney Schmidt stated in his affidavit that he personally told Attorney Kelly, around April 15, 2005, to serve all pleadings on Attorney Raspanti and that Attorney Kelly agreed. He stated that Attorney Kelly understood that Attorney Raspanti was handling all motions and court appearances prior to trial. However, Attorney Schmidt stated that Attorney Kelly served him with nine pleadings and requests for discovery that included a certificate of service stating that all counsel of record had been served. Considering this statement and the agreement he had with Attorney Kelly regarding serving Attorney Raspanti, Attorney Schmidt *243 assumed Attorney Raspanti received the same documents. As a result, he did not forward copies of any of the pleadings to Attorney Raspanti.

Affidavit of Attorney Ciolino
Attorney Ciolino stated in his affidavit that Attorney Kelly served him with three pleadings, which included the certificate of service certifying that all counsel of record were served. He also assumed, due to the certificate's wording, that Attorney Raspanti received the same pleadings and did not forward copies. Attorney Ciolino also stated that he was not available to appear at any depositions the week of June 20, 2005. Again, he reiterated that Attorney Raspanti was to handle all motions and court appearances prior to trial.

Affidavit of Attorney Raspanti
Attorney Raspanti stated in his affidavit that Attorney Kelly did not serve him with any pleadings. Additionally, around April 15, 2005, he told Attorney Kelly not to serve any pleadings on Attorney Schmidt. Attorney Kelly allegedly agreed to serve all future pleadings, etc., on Attorney Raspanti or Attorney Ciolino. Attorney Raspanti reiterated this request in his letter, dated April 22, 2005, and in his memorandum in support of his motion for a new trial on the exception of no cause of action, dated April 25, 2005. Attorney Kelly did serve the motion to continue plaintiff's motion for summary judgment one day prior to the scheduled hearing.
Further, Attorney Raspanti stated he later learned that Attorney Kelly continued to serve Attorney Schmidt. He said that Attorney Schmidt told him that he did not forward copies of the pleadings due to the wording of the certificates of service. Attorney Raspanti learned on July 22, 2005, that Attorney Ciolino had been served with several pleadings. He asked for Attorney Ciolino's file. Attorney Ciolino told Attorney Raspanti that he did not forward the pleadings due to the certificates of service. Attorney Raspanti did not learn of any discovery requests from the Firm until Friday, May 27, 2005, in open court. Attorney Kelly allegedly stated in open court that he did not think it was proper to serve an attorney of record who was also the plaintiff although he had agreed to do so.

Trial Court's Assessment of Contempt & Sanctions
Considering the four factors followed by Louisiana jurisprudence, we find that the factors weigh against dismissing Attorney Raspanti's case. A review of the record fails to show that Attorney Raspanti's alleged failure to comply was willful. Also, less drastic sanctions would have been more effective because the assessment of costs would require both parties to come to another agreement as to how each party would be served and what would be included in the certificate of service. The record also documents that any alleged misconduct of Attorney Raspanti occurred because of the misunderstandings between himself and Attorney Kelly. There is no evidence in the record that the alleged failure prejudiced the Firm's trial preparation because the Firm admits, in its brief, that it did not begin discovery because it was waiting for the abandonment period of three years[1] to run in this case. In fact, the Firm's brief used the language "[o]nce it became apparent that this case would be pursued . . ." to characterize the discovery in this case.
*244 First, the trial court's order compelling discovery did not contain any specific language regarding that it was considering dismissing Attorney Raspanti's case with prejudice. This Court upheld a dismissal in which the trial court specifically stated that noncompliance would result in a dismissal. Peter, 05-0317, p. 5, 913 So.2d at 134.
Second, the record reveals that the alleged failure to copy the file was due to miscommunication and error on behalf of both parties. Attorney Raspanti attempted to comply with the trial court's order. According to the record, he and DocuMart were waiting to hear from Attorney Kelly to begin the copying process.
Third, La. C.C.P. art. 1438 states that "reasonable notice in writing" must be given to the deponent and every other party to the action. In the case sub judice, Attorney Raspanti alleges that he was not subpoenaed for the deposition. Attorney Kelly also knew that Attorney Raspanti would not be available for a deposition that day because neither of his co-counsel of record could attend. Attorney Raspanti also offered to schedule his deposition after the deadline with the stipulation that he would not pursue any discovery of his own after the deadline.
After a thorough review of the record, we find it devoid of evidence that Attorney Raspanti was clearly aware that failure to comply with the order would result in the dismissal of his case, which is the most severe penalty. Additionally, the record lacks evidence that Attorney Raspanti's actions were willful, in bad faith, or through his own fault. Although service of one counsel of record usually equates with service of all co-counsel of record, the record documents apparent miscommunication between the Firm, Attorney Raspanti, and his co-counsel of record. Therefore, we find that the trial court abused its discretion in dismissing Attorney Raspanti's case with prejudice and granting the Firm $500 in fees and costs. However, some discovery failure occurred in the present case. Therefore, Attorney Raspanti must "show that his failure was justified or that special circumstances would make an award of expenses unjust." Allen v. Smith, 390 So.2d 1300, 1302 (La.1980). Accordingly, we reverse the trial court's judgment and remand for proceedings consistent with this opinion, including a hearing to determine reasonable expenses caused by the discovery failures.

MOTION FOR SUMMARY JUDGMENT
Appellate courts review summary judgments under the de novo standard of review. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. A summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B).
Attorney Raspanti asserts that the trial court erred by declaring his motion for summary judgment moot after she dismissed his case, with prejudice, against the Firm. The trial court did not consider the substance of the motion. We find that the trial court committed error in dismissing his suit. Therefore, Attorney Raspanti's motion for summary judgment is no longer moot and must be considered.

THE FIRM'S EXCEPTION OF NO CAUSE OF ACTION
Pursuant to the above discussion regarding Attorney Raspanti's motion for summary judgment, the Firm's exception of no cause of action is also no longer moot and must be considered.

*245 DECREE

Accordingly, we find the trial court did not err in granting Mr. Litchfield's exception of no cause of action. However, we find that the trial court abused its discretion by dismissing Mr. Raspanti's case with prejudice and by declaring Attorney Raspanti's motion for summary judgment and the Firm's exception of no cause of action moot and we reverse. We remand these matters to the trial court for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED IN PART
TOBIAS, J., Concurs and Assigns Reasons.
TOBIAS, J., concurring.
I respectfully concur.
In my view, when a lawyer is a party to litigation, it is inappropriate and unprofessional, if not unethical, for opposing counsel to serve the party/lawyer with pleadings (such as petitions, motions, discovery, et cetera), unless (a) the party/lawyer in writing specifically requests that opposing counsel serve him (her) and clearly indicates that he (she) has informed his (her) own counsel of the request, or (b) opposing counsel obtains a written order of court directing that service of documents be made upon the party/lawyer directly. If the opposing counsel receives written instructions from the party/lawyer's counsel to serve the party/lawyer pleadings, et cetera, opposing counsel should do so, but should also serve a copy of the served document on at least one counsel of record for the party/lawyer.
In the case at bar, I find that opposing counsel's service of documents upon his opposing counsel was notice to the plaintiff, Mr. Raspanti, and that responsibility fell upon Mr. Raspanti's counsel to advise him that he (they) had been served with a pleading. Nevertheless, inasmuch as the trial court never indicated that failure to comply with its discovery order would result in a dismissal of the case, I agree with the majority for the reasons assigned by them that dismissal of Mr. Raspanti's case with prejudice was error.
NOTES
[1] La. C.C.P. art. 561 Abandonment in trial and appellate court reads, in pertinent part:

A. (1) An action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years. . . .