Judge Regina Bartholomew-Woods
This appeal arises from a claim for worker's compensation. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Plaintiff-Appellant, Dana Boyd ("Ms. Boyd"), was employed as a cook by Defendant-Appellee, Jazz Casino Company, LLC, d/b/a Harrah's New Orleans Casino ("Harrah's").[1] On September 20, 2016, Ms. Boyd, in the course and scope of her employment, fell while ascending stairs as she exited Harrah's. Ms. Boyd sustained injuries when she landed on her hands and knees and hit her right shin. Despite persisting pain, Ms. Boyd returned to a full day of work on September 21, 2016. After her two (2) scheduled off days, Ms. Boyd returned to work on September 23, 2016, to report her injuries and request medical treatment. On that same day, Ms. Boyd reported to Concentra Medical Center[2] and complained of pain in her right knee. Dr. Marcus Pittman diagnosed her with a contusion of the right knee and a strained right knee and restricted her to light duty work. Based on that restriction, Ms. Boyd returned to work from September 24-26, 2016.[3]
*372 On September 26, 2016, Ms. Boyd presented to the West Jefferson Medical Center Emergency Room and reported increased pain and swelling; Ms. Boyd was diagnosed with an avulsion fracture to her right tibia, as well as sprains and strains.[4] Ms. Boyd was referred to an orthopedist. On September 27 and 28, 2016, as a result of her pain, Ms. Boyd called out of work.[5] After two (2) scheduled days off,[6] general manager Chris Brown contacted Ms. Boyd, via text message, wherein she explained that she would be unable to return to work until she could be seen by an orthopedist. According to Ms. Boyd, from September 30, 2016 to October 11, 2016, she communicated, via text messages, with her supervisor, Chef Eric Porter, regarding her accident and resulting injuries, doctor's appointments, and inability to work.[7] According to Ms. Boyd, it was not until October 3, 2016, that her completed paperwork was submitted to a Harrah's human resources representative. On October 6, 2016, the human resources representative contacted Dr. Wesley Clark ("Dr. Clark"), an orthopedist. On the next day, October 7, 2016, Dr. Clark evaluated Ms. Boyd; she complained of pain in her right leg and hip. Dr. Clark released Ms. Boyd to work with the restriction of modified duty. On the following day, Ms. Boyd contacted her supervisor, via text message, to notify him that she would return to work. On October 11, 2016, Harrah's terminated Ms. Boyd for job abandonment. Harrah's contends that it sent Ms. Boyd a letter advising her of the termination, via certified mail; however, Ms. Boyd contends that she never received the letter. Harrah's further avers that had Ms. Boyd produced a medical excuse regarding the days that she missed work, Harrah's would have reinstated her employment. To date, Ms. Boyd has not produced any such documentation.
In January 2017, Ms. Boyd was released to work without restriction. On February 5, 2017, Ms. Boyd secured new employment with the Hyatt Hotel. Ms. Boyd continued to receive medical treatment and in March 2017, Ms. Boyd reported that in addition to continued pain, she was experiencing pain in her right hip, right leg, and lower back. Ms. Boyd was advised that physical therapy had been authorized for solely her right knee.[8] According to Ms. Boyd, she was forced to resign from the Hyatt Hotel on July 26, 2017, because she was still experiencing pain as a result of the injuries that she sustained due to the September 20, 2016 accident.
Ms. Boyd avers that she was temporarily totally disabled from September 27, 2016 to February 5, 2017, and again on July 26, 2017, through the following month.[9] Ms. Boyd also contends that Harrah's refused to authorize medical treatment for all of her injuries. Ms. Boyd sought attorney's fees and penalties because she alleges that Harrah's refused *373 to authorize treatment and pay indemnity benefits.
This matter was heard before the Office of Workers' Compensation ("OWC") on September 27, 2017.[10] On December 15, 2017, the OWC rendered its written judgment and found, in pertinent part, that on September 20, 2016, Ms. Boyd, while in the course and scope of her employment as a cook at Harrah's, sustained compensable injuries to her right knee, shin, ankle, and arm. OWC further found that Harrah's did not fail to accommodate Ms. Boyd's work restrictions and that she was not entitled to expand her work-related injuries and medical treatment to include new body parts, specifically, her lower back, right hip, and right leg. Accordingly, OWC found that Ms. Boyd was not entitled to indemnity benefits, either TTD [temporary total disability] and/or SEB[11] [supplemental earnings benefits]. The OWC further declined to award attorney's fees and/or penalties. It is from this judgment that Ms. Boyd now appeals.[12]
On February 2, 2018, the OWC Clerk's Office issued a Notice of Appeal Charges in the amount of $2,043.10. Thereafter, Ms. Boyd's counsel was unable to reach her regarding the costs of the appeal and requested a waiver for payment of advanced costs. On March 6, 2018, Ms. Boyd's counsel filed an unopposed ex parte motion for extension of time for payment of appeal costs. On March 8, 2018, OWC extended the deadline to March 29, 2018, for Ms. Boyd to remit payment. On March 29, 2018, Ms. Boyd's counsel was still unable to contact her. On April 16, 2018, Harrah's filed a motion to dismiss the appeal on grounds of abandonment. On May 7, 2018, OWC held a hearing, and ordered Ms. Boyd to pay, in full, the estimated costs of the appeal on or before May 17, 2018. On *374 May 15, 2018, Ms. Boyd filed an ex parte motion to file an in forma pauperis affidavit, pursuant to La. C.C.P. art. 5183(A).[13] The OWC granted the motion and permitted Ms. Boyd to proceed without paying the costs, in advance, or as they accrue, or furnishing security thereof; to which Harrah's opposed. On June 6, 2018, Harrah's filed a second motion to dismiss appeal, which the OWC denied on July 17, 2018. On July 24, 2018, Harrah's sought a writ of supervisory review from this Court.[14] On November 7, 2018, this Court issued an Order consolidating the writ with the above-captioned appeal.
DISCUSSION
On appeal, Ms. Boyd raises the following assignments of error:
1. Whether the OWC erred in finding that Harrah's did not fail to accommodate Ms. Boyd's light duty work restrictions;
2. Whether the OWC erred in finding that Ms. Boyd did not sustain injuries to her lower back, right hip, and right lower extremity in connection with her accident on September 20, 2016;
3. Whether the OWC erred in finding that Harrah's properly declined to authorize medical treatment for Ms. Boyd's lower back, right hip, and right lower extremity;
4. Whether the OWC erred in finding that Ms. Boyd was not entitled to either TTD or SEB; and
5. Whether the OWC erred in not awarding attorney's fees and penalties against Harrah's for not paying Ms. Boyd TTD and SEB, and not authorizing medical treatment.
Standard of Review
This Court is mindful that the Louisiana Supreme Court has stated that "the provisions of the worker's compensation law must be given a liberal interpretation ... to be liberally construed in favor of coverage." Daigle v. Sherwin-Williams Co. , 545 So.2d 1005, 1006-07 (La. 1989). Further, this Court has reasoned that
[i]n workers' compensation cases, "it is well-settled that the appropriate standard of appellate review is the manifest error or clearly wrong standard." Blair v. Wal-Mart Stores, Inc. , [20] 01-2211, p.7 (La. App. 4 Cir. 5/15/02), 818 So.2d 1042, 1047. Under that standard, "[t]he trial court's determinations as to whether the worker's testimony is credible and whether the worker has discharged his burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error." Id. (quoting *375 Bruno v. Harbert Int'l, Inc ., 593 So.2d 357, 361 (La. 1992) ). However, "[w]hen legal error interdicts the fact-finding process in a workers['] compensation proceeding, the de novo , rather than manifest error, standard of review applies." Tulane Univ. Hosp. & Clinic v. Lockheed Martin Corp. , [20] 11-0179, p. 3 (La. App. 4 Cir. 6/29/11), 70 So.3d 988, 990 (citing MacFarlane v. Schneider Nat'l Bulk Carriers, Inc. , [20] 07-1386, p. 3 (La. App. 4 Cir. 4/30/08), 984 So.2d 185, 188 ). "Likewise, interpretation of statutes pertaining to workers' compensation is a question of law and warrants a de novo review to determine if the ruling was legally correct." Id.
Jackson v. Family Dollar Stores of Louisiana Inc. , 2017-0712, pp. 5-6 (La. App. 4 Cir. 10/24/18), 258 So.3d 165, 2018 WL 5284406. Here, Ms. Boyd's assignments of error address factual determinations, rather than legal interpretations. Thus, the manifest error standard of review is the appropriate standard in this matter.
Assignment of Error Number 1
In her first assignment of error, Ms. Boyd alleges that the OWC manifestly erred when it found that Harrah's did not fail to accommodate her light duty work restrictions. Ms. Boyd contends that she was restricted to light duty work and although Harrah's permitted her to sit at a kitchen stool to perform her duties, if the kitchen became busy, she was forced to move about the kitchen, despite being in pain. The OWC acknowledged that this modification was "woefully inadequate," but found that it was nonetheless an accommodation. The OWC held that Ms. Boyd failed to prove that Harrah's failed to accommodate her work restrictions, because she did not attempt to report the inadequate accommodations to either Harrah's or her treating physician. Thus, based on the factual conclusions and determinations reached by the OWC, we do not find that it abused its great and broad discretion in not concluding that Harrah's failed to accommodate Ms. Boyd's work restrictions. Thus, we find that Ms. Boyd's assignment of error is without merit.
Assignments of Error Numbers 2 and 3
Because Ms. Boyd's assignments of error numbers 2 and 3 both involve her lower back, right hip, and right lower extremity - specifically, whether she sustained injuries to these body parts in her September 20, 2016 accident, and whether Harrah's properly denied authorization for medical treatment to these body parts - these issues will be addressed together.
Ms. Boyd avers that during her initial visit to Concentra Medical Center, she complained of pain in her right leg, right knee, and lower back. She further states that during her initial visit with Dr. Clark, she complained of pain throughout her right lower extremity and right hip. Ms. Boyd also testified that she complained of pain in her lower back, right hip, and lower right extremity during physical therapy.
Conversely, Harrah's asserts that during her visit with Dr. Clark, Ms. Boyd completed a pain diagram and indicated pain in her right leg, but not her hips or back. Specifically, Ms. Boyd indicated that she experienced pain above and below her right knee. Further, Dr. Clark examined Ms. Boyd, but did not find tenderness or limited range of motion with her back or hips. Harrah's contends that Ms. Boyd first complained of hip pain on November 8, 2016, to her physical therapist. Harrah's further contends that, for the first time, on December 26, 2016, Ms. Boyd presented to the West Jefferson Medical Center Emergency Room and reported muscle spasms in her left lower back, pain in her lower left hip, left lower back, and abdomen; Ms. Boyd reported that she began experiencing *376 this pain one and a half (1.5) weeks prior.
The OWC concluded that it did not find complaints about the lower back, right hip, and right lower extremity in Ms. Boyd's medical records prior to her March 6, 2017 request to expand medical treatment to those areas. This Court inspected the transcription from Ms. Boyd's visit to Concentra Medical Center and takes note that no body parts, other than the right knee, are mentioned. Further, this Court examined the incident report that Ms. Boyd completed with Harrah's, and observes that this report states that she fell on her right knee and right shin. Both her documents from Dr. Clark and workers' compensation claim mention pain in the right knee, and nowhere else. Based on the aforementioned, we find that the OWC did not abuse its discretion when it concluded that Ms. Boyd's lower back, right hip and right lower extremity pains/complaints do not relate to the accident that occurred on September 20, 2016. It weighed the evidence presented to it, both subjective testimony, as well as objective exhibits and came to a reasonable conclusion. For these reasons, we find no merit in these two assignments of error.
Assignment of Error Number 4
In her fourth assignment of error, Ms. Boyd argues that Harrah's deprived her of TTD benefits, did not facilitate her return to work, and prevented her from returning to work; Ms. Boyd emphasizes the "two [2] to three [3] weeks during which she was waiting to see an orthopedist." While Ms. Boyd acknowledges that she was released to return to work with light duty restrictions, she asserts that she "believed " she could not return to work until she was seen by an orthopedist.
Harrah's asserts that no doctor determined that Ms. Boyd was totally disabled, rather she was released to return to work with the restriction of modified duty. Further, Harrah's argues that Ms. Boyd failed to produce any evidence of her total disability, and she failed to submit a 1020 form to show that she did not earn any wages.
The OWC reasoned that Ms. Boyd was released to return to work with the restriction of modified duty. The OWC also stated that Ms. Boyd testified that no doctor ever told her that she was temporarily disabled or supplied an "off-work slip indicating that she should not return to work." The OWC concluded that no medical evidence supported Ms. Boyd's argument that she was temporarily totally disabled.
This Court has explained that TTD benefits are provided under Title 23 of the Louisiana Revised Statutes, the Louisiana Workers' Compensation Act. Under La. R.S. 23:1221(1)(a), an injured worker entitled to TTD benefits is paid compensation benefits in the amount of "sixty-six and two-thirds percent of wages during the period of [temporary total] disability." Bay v. Jefferson Par.Pub. Sch. , 2016-0890, p. 6 (La. App. 4 Cir. 4/26/17), 218 So.3d 207, 211. This Court has further stated that "[t]he workers' compensation statute provides that an employee who suffers a workplace injury shall be awarded TTD benefits only when the employee proves by clear and convincing evidence that the employee 'is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment.' " La. R.S. 23:1221(1)(C). This Court only requires that an employee seeking TTD benefits introduce "objective medical evidence" to sustain his or her claim by clear and convincing evidence. Marti v. City of New Orleans , 2012-1514, p. 30 (La. App. 4 Cir. 4/10/13), 115 So.3d 541, 560. In determining whether an employee has met her burden of proving by clear and convincing *377 evidence her entitlement to TTD benefits, the OWC must weigh both medical and lay evidence. Id. , 2012-1514, pp. 30-31, 115 So.3d at 560. Jackson, 2017-0712, p. 10, 258 So. 3d. at 174-75. Presently, based on both the medical and lay evidence, we agree with the OWC and find that the OWC did not commit manifest error when it found that Ms. Boyd was not entitled to TTD benefits. Thus, this assignment of error is without merit.
Assignment of Error Number 5
In her final assignment of error, Ms. Boyd argues that the OWC committed error when it declined to award her penalties and attorney's fees. Ms. Boyd asserts that penalties and attorney's fees are warranted, because Harrah's was unreasonable in denying authorization for medical treatment to body parts other than her right knee. Ms. Boyd further asserts that Harrah's did not facilitate and even prevented her from returning to work. Contrarily, Harrah's asserts that because they successfully controverted Ms. Boyd's claims, the OWC did not err in denying Ms. Boyd's request for penalties and attorney's fees.
Penalties and attorney's fees are awarded pursuant to La. R.S. 23:1201(F). The Louisiana Supreme Court explained that the award of "penalties and attorney fees in workers' compensation cases are essentially penal in nature. The purpose of the imposition of penalties and attorney fees is to discourage indifference and undesirable conduct by employers and insurers." Authement v. Shappert Eng'g , 2002-1631, p. 11 (La. 2/25/03), 840 So.2d 1181, 1188. Further, La. R.S. 23:1201(F)(2) provides that the award of penalties and attorney's fees "shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control." The Louisiana Supreme Court explained that "in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits." Brown v. Texas-LA Cartage, Inc. , 1998-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890. In Brown , the Louisiana Supreme Court looked to Woods v. Ryan Chevrolet, Inc., 30,206, p. 9 (La. App. 2 Cir. 2/25/98), 709 So.2d 251, 257, which provided that "[t]he employee's right to such benefits will be deemed 'reasonably controverted' if the employer or insurer had a reasonable basis for believing that medical expenses and indemnity benefits were not due the employee.... Reasonably controverting a claim means that the payor has factual or medical information of such a nature that it reasonably counters that provided by the claimant." Id. Here, Ms. Boyd failed to prove that she was entitled to indemnity benefits, and the OWC ruled against her. Therefore, the OWC had a reasonable basis for denying an award of penalties and attorney's fees in her favor. Thus, we find this assignment of error to be without merit.
Consolidated Writ 2018-C-0658
While the above-captioned appeal was pending, Harrah's sought supervisory review of the OWC's July 17, 2018 judgment denying Harrah's second motion to dismiss an appeal. After filing her appeal with this Court, Ms. Boyd failed to timely pay costs, and Harrah's filed its first motion to dismiss appeal as abandoned. The OWC granted Ms. Boyd an additional ten (10) days to pay the costs on or before May 17, 2018 and further ordered that failure to pay the costs would result in dismissal on the ground of abandonment. On May 15, 2018, Ms. Boyd filed a motion to be granted in forma pauperis status pursuant to La. C.C.P. art. 1581(A); the OWC granted Ms. Boyd's motion, and Harrah's filed an *378 opposition. Thereafter, Harrah's filed its second motion to dismiss appeal. Based on the fact that the OWC granted Ms. Boyd in forma pauperis status, we find that the writ application filed by Harrah's seeking dismissal of this appeal should be denied.
DECREE
For the aforementioned reasons, we affirm the OWC's judgment. Further, we deny Harrah's writ seeking supervisory review of the OWC's July 17, 2018 denial of its second motion to dismiss the appeal.
AFFIRMED; WRIT DENIED

Ms. Boyd worked in Manning's Restaurant which is located inside Harrah's.

Concentra Medical Center is Harrah's occupational medical clinic.

Ms. Boyd complained that the kitchen got busy and she was forced to move about and retrieve items. Harrah's contends that Ms. Boyd made no complaints of her light duty work restriction being exceeded.

Ms. Boyd contends that she worked her scheduled shift on this day. However, Harrah's avers that she reported to the hospital rather than to work.

Harrah's contends that there is no record of Ms. Boyd calling out of work on those days.

Both Ms. Boyd and Harrah's agree that she was scheduled off on September 29-30, 2016.

Harrah's contends that although Ms. Boyd was scheduled to work October 1 through 4, 2016, she neither reported to work, nor called out to inform anyone that she would be absent.

According to Harrah's, Ms. Boyd made a formal request for treatment to her right hip and lower back on March 6, 2017.

On September 20, 2017, Ms. Boyd secured employment with the Sheraton Hotel.

At trial, the parties made the following stipulations, which were recited in the OWC's written judgment:
1. Claimant, Dana Boyd, was employed by Harrah's as a cook on or about September 20, 2016, the date of the accident;
2. Claimant's, Dana Boyd's, average weekly wage is $533.32 and the corresponding compensation rate is $355.56;
3. Claimant, Dana Boyd, worked full duty on September 21, 2016;
4. Claimant's, Dana Boyd's, scheduled off-work days were September 22, 2016, and September 23, 2016;
5. Claimant's, Dana Boyd's, accident was reported on September 23, 2016;
6. Claimant, Dana Boyd, was placed on restricted work duty on September 23, 2016 by Concentra Medical Center; and
7. Claimant, Dana Boyd, returned to Harrah's and worked restricted work duty at the same wages on September 24, 2016, September 25, 2016, and September 26, 2016.

This Court explained that
[t]he purpose of SEBs is to provide compensation to an injured employee for [her] lost wage-earning capacity." Bastoe v. Burger King Distribution Services, 96-0021 at p. 3 (La. App. 4 Cir. 03/19/97), 691 So.2d at 276. A workers' compensation claimant is entitled to SEBs if, as a result of a work-related injury, she is unable to earn at least 90 percent of her pre-injury wages. Id. ; La. R.S. 23:1221(3)(a).
Doane v. Omni Royal Orleans Hotel , 2016-0144, p.p. 5-6 (La. App. 4 Cir. 10/26/16), 204 So.3d 615, 618-19. On appeal, Ms. Boyd acknowledges that the OWC ruled that she was not entitled to SEB and that it would be a "fruitless endeavor and waste of time" to raise this issue on appeal after being denied all indemnity benefits on November 7, 2016. In accordance with the Uniform Rules, Courts of Appeal, Rule 2-12.4, issues that are not briefed on appeal are deemed abandoned. Because Ms. Boyd has not briefed her entitlement to SEB, we deem it as abandoned and will not address said issue. See also, Murungi v. Touro Infirmary, 2012-0213, p. 3 n. 2 (La. App. 4 Cir. 03/01/2013), 110 So.3d 1250, 1252.

On December 19, 2017, Ms. Boyd timely filed a petition for devolutive appeal, which the OWC granted on January 11, 2018.

La. C.C.P. art. 5183(A) provides:
A person who wishes to exercise the privilege granted in this Chapter shall apply to the court for permission to do so in his first pleading, or in an ex parte written motion if requested later, to which he shall annex:
(1) His affidavit that he is unable to pay the costs of court in advance, or as they accrue, or to furnish security therefor, because of his poverty and lack of means, accompanied by any supporting documentation; and
(2) The affidavit of a third person other than his attorney that he knows the applicant, knows his financial condition, and believes that he is unable to pay the costs of court in advance, or as they accrue, or to furnish security therefor.
(3) A recommendation from the clerk of court's office as to whether or not it feels the litigant is in fact indigent, and thus unable to pay the cost of court in advance, or as they accrue, or to furnish security therefor, if required by local rule of the court.

2018-C-0658